**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SUMMIT SHEET METAL, LLC,

      Plaintiff,

      v.

SHEET METAL WORKERS'
INTERNATIONAL ASSOCIATION,
LOCAL UNION NO. 44,

      Defendant.

SHEET METAL WORKERS
INTERNATIONAL ASSOCIATION,
LOCAL UNION NO. 44,

      Plaintiff,

      v.

SUMMIT SHEET METAL, LLC,

      Defendant.

**CONSOLIDATED TO:**

CIVIL ACTION NO. 3:CV-13-1623

(JUDGE CAPUTO)

CIVIL ACTION NO. 3:CV-13-2079

(JUDGE CAPUTO)

**FILED
SCRANTON**

MAR 28 2014

PER _____ 
DEPUTY CLERK

## MEMORANDUM

Presently before the Court are cross-motions for summary judgment filed by Plaintiff Summit Sheet Metal, LLC ("Summit") (Doc. 25) and Defendant Sheet Metal Workers International Association, Local Union No. 44 ("Local 44") (Doc. 21). Because the parties' agreement required Summit to negotiate for a renewal agreement, and, if negotiations failed, to submit to interest arbitration, Summit's motion for summary judgment will be denied and Local 44's motion for summary judgment will be granted.

### I. Factual Background and Procedural History

Local 44, a labor organization representing employees in an industry affecting commerce, and Summit, an employer in an industry affecting commerce, are parties to a collective bargaining agreement. (*Local 44's SMF*, ¶¶ 1-3, 9.)  Specifically, on August 2,

2011, Summit signed a "Form Letter of Assent" (the "Letter of Assent"), which provides, in

relevant part:

> This is to certify that the undersigned Empower [sic] has examined a copy of the current approved Labor Agreement between SMACNA of Northeastern Pennsylvania and Local #44 Sheet Metal Workers.
>
> The Undersigned Employer hereby agrees to comply with all of the terms and conditions of employment contained in the above mentioned agreement and all approved amendments thereto.
>
> It is understood that the signing of this Letter of Assent shall be binding on the undersigned Employer as though he had signed the above referred to Agreement, including any approved amendments thereto. . . . .

(*Compl.*, Ex. A., 30.)  The Letter of Assent also states:

> This letter of assent should become effective for the undersigned Employer on the 8th day of August 2011, and shall remain in effect until the 30th day of April 2013.
>
> If the undersigned Employer does NOT intend to renew this assent, he shall so notify the Local Union in writing at least thirty (30) days prior to the termination date.

(*Id.*)

The Labor Agreement referred to in the Letter of Assent is entitled "Standard

Form of Union Agreement Sheet Metal, Roofing, Ventilating, and Air Conditioning

Contracting Divisions of the Construction Industry" (the "Standard Form Local 44 CBA").

(*Faust Aff.*, ¶ 2.)  The Standard Form Local 44 CBA is a standard form of agreement

used not only by Local 44 as its collective bargaining agreement with all employers

within the jurisdiction of Local 44, but also by all other Locals of the Sheet Metal

Workers International Association throughout the United States. (*Id.* at ¶ 3.)  Summit's

owner, Shane Ruggere ("Ruggere"), signed the Standard Form Local 44 CBA,

Addendum #2, the Letter of Assent, and the signature page of the addendums to the

Standard Form Local 44 CBA. (*Compl.*, Ex. A.)

The specific agreement that Summit agreed to abide by was between Local 44

and the Sheet Metal Contractors Association of Northeastern Pennsylvania, Inc. (the

"Association"). (*Faust Aff.*, ¶ 4.)  The Association is an association of employers

2

engaged in the sheet metal, roofing, ventilating and air conditioning industry within the

jurisdiction of Local 44, who have agreed to provide their respective collective bargaining

rights to the Association to negotiate a collective bargaining agreement on their behalf

with Local 44. (*Id.* at ¶ 5.)

The Standard Form Local 44 CBA was entered into on May 1, 2010. The term of

the Standard Form Local 44 CBA is provided for in Article XV, Section 1:

> This Agreement and Addenda Numbers one through three attached hereto
> shall become effective on the 1st day of May, 2010 and remain in full force
> and effect until the 30th day of April, 2013 and shall continue in force from
> year to year thereafter unless written notice of reopening is given not less
> than ninety (90) days prior to the expiration date. In the event such notice
> of reopening is served, this Agreement shall continue in force and effect
> until conferences relating thereto have been terminated by either party by
> written notice, provided, however, that if this Agreement contains Article X,
> Section 8, it shall continue in full force and effect until modified by order of
> the National Joint Adjustment Board or until the procedures under Article X,
> Section 8 have been otherwise completed.

(*Compl.*, Ex. A, 11.) The Standard Form Local 44 CBA contains Article X, Section 8.

That section provides for interest arbitration, and it states, in relevant part:

> In addition to the settlement of grievances arising out of interpretation or
> enforcement of this Agreement as set forth in the preceding sections of this
> Article, any controversy or dispute arising out of the failure of the parties to
> negotiate a renewal of this Agreement shall be settled as hereinafter
> provided:
>
> (a). Should the negotiations for a renewal of this Agreement or
> negotiations regarding a wage/fringe reopener become deadlocked in the
> opinion of the Union representative(s) or of the Employer('s)
> representative(s), or both, notice to that effect shall be given to the National
> Joint Adjustment Board.
>
> . . . .
>
> The dispute shall be submitted to the National Joint Adjustment Board
> pursuant to the rules as established and modified from time to time by the
> National Joint Adjustment Board. The unanimous decision of said Board
> shall be final and binding upon the parties, reduced to writing, signed and
> mailed to the parties as soon as possible after the decision has been
> reached.
>
> . . .
>
> (d). Unless a different date is agreed upon mutually between the
> parties or is directed by the unanimous decision of the National Joint
> Adjustment Board, all effective dates in the new agreement shall be

retroactive to the date immediately following the expiration date of the expiring agreement.

(*Id*. at Ex. A, 8-9.)  Additionally, Article XV, Section 4 of the Standard Form Local 44 CBA provides that "[e]ach Employer hereby waives any right it may have to repudiate this Agreement during the term of this Agreement, or during the term of any extension, modification or amendment to this Agreement." (*Id*. at Ex. A, 11.)  According to Ruggere, at the time the collective bargaining agreement was being negotiated, the parties agreed it would remain in effect until April 30, 2013, and "if at that time the collective bargaining agreement was not financially advantageous to both parties and was not financially possible for Summit Sheet Metal, LLC to perform under, Summit Sheet Metal would be allowed to withdraw its assent as long as it notified the Local Union in writing at least thirty (30) days prior to the termination date." (*Ruggere Aff.*, ¶ 2.)

On January 8, 2013, Warren F. Faust ("Faust"), Business Manager of Local 44, sent a letter to Summit stating, in relevant part:

> As per Article XV, Section 1, of our Collective Bargaining Agreement, written notice is hereby given of the Unions' intentions of reopening our agreement.
>
> . . .
>
> Local Union #44 will gladly meet with the negotiation committee appointed by SMACNA of N.E. Pa.  If you are not a member of this association, Local #44 will also be happy to meet with you, but it would be more convenient if you would appoint a committee to meet with Local #44 Negotiation Committee.

(*Faust Aff.*, Ex. A.)

On March 22, 2013, Summit, through its counsel, sent a letter to Faust advising that "Summit Sheet Metal, LLC does not intend to renew its assent to the agreement, contract terms and conditions, and is hereby notifying the Local Union in writing at least thirty (30) days prior to the termination date." (*Compl.*, Ex. B.)  Faust responded to Summit's March 22, 2013 letter, stating: "[g]iven the provisions of Article XIV [sic]

4

Section 1 and Article X Section 8, Local 44 has no intention of terminating the collective bargaining agreement with Summit Sheet Metal, LLC." (*Compl.*, Ex. C.)  That letter also provided Summit with a list of dates within which Faust was available to meet for purposes of negotiating a renewal of the collective bargaining agreement. (*Id.*)

Thereafter, Summit, on or about April 30, 2013, filed a Complaint for Declaratory Judgment in the Court of Common Pleas of Luzerne County, Pennsylvania. (*Compl.*) Among other relief requested, Summit sought to have the "Court grant the Plaintiff, Summit Sheet Metal, L.L.C., declaratory relief, enforcing the terms of the collective bargaining agreement and permitting the Plaintiff not to renew the collective bargaining agreement." (*Id.*)  Summit's Complaint was subsequently removed to this Court and docketed as *Summit Sheet Metal, LLC v. Sheet Metal Workers' International Association, Local Union No. 44*, No. 3:CV-13-1623.[1]

The next day, May 1, 2013, Faust sent Summit a letter reiterating that Local 44 had no intention of terminating the collective bargaining agreement. (*Faust Aff.*, Ex. B.) The letter further states that "Local 44 and the Sheet Metal Contractors Association of Northeastern Pennsylvania, Inc. have agreed to a new collective bargaining agreement effective May 1, 2013.  If I do not hear from you within three (3) days of the date of this letter to schedule a negotiating session, I intend to submit this matter to the National Joint Adjustment Board." (*Id.*)

Local 44 submitted to the National Joint Adjustment Board ("NJAB") for the Sheet Metal Industry a Notice of Unresolved Dispute between Summit and Local 44 relating to negotiations for a renewal of the Standard Form Local 44 CBA. (*Faust Aff.*, ¶ 14.) A hearing date was then set for all the parties to submit their evidence and arguments to

---

[1]     Summit moved to remand the action to state court. (Doc. 4.)  The motion was denied on August 26, 2013. (Docs. 9; 10.)

the agreed-upon arbitration panel under the Standard Form Local 44 CBA. (*Id.* at ¶ 15.)

On May 31, 2013, Summit's counsel sent a letter to the National Joint Adjustment Board, indicating that "[i]t is my client's position that it has the absolute legal right and privilege to unilaterally refuse to enter into a renewal collective bargaining agreement with SMWIA Local Union #44. . . . Since this State Court action was pending prior to the submission to the NJAB, and the matter can be decided in Pennsylvania by a fair tribunal at less cost to the parties, my client respectfully declines to participate in the NJAB arbitration." (*Faust Aff.*, Ex. C.)

On June 24, 2013, Local 44 appeared and submitted testimony to the National Joint Adjustment Board for the Sheet Metal Industry. (*Faust Aff.*, ¶ 17.)  Summit did not appear at the hearing. (*Id.*)  By decision dated June 24, 2013, the National Joint Adjustment Board for the Sheet Metal Industry noted that despite Summit's contention that it was not obligated to a negotiate a new agreement based on the non-renewal provision in the Letter of Assent:

> the NJAB determined that, based upon documents submitted in this proceeding, the employer had executed a collective bargaining agreement and addenda with Local 44.  That collective bargaining agreement established the employer's intention to be bound by the interest arbitration procedures of Article X, Section 8, for purposes of resolving any dispute over the failure of the parties to reach agreement upon terms for a new collective bargaining agreement.  In exercising its authority as an arbitration tribunal, the NJAB has determined that as a consequence, all procedural requirements have been met, and that the matter, therefore, was properly before the NJAB for decision. . . .

*Sheet Metal Workers International Association, Local Union No. 44 v. Summit Sheet Metal, LLC,* No. 3:CV-13-2079, ECF No. 1, Ex. C.  The NJAB's unanimous decision directed Summit to "immediately execute a three year collective bargaining agreement with Local Union 44, effective May 1, 2013 to April 30, 2016, including terms and conditions identical to those set forth in the current collective bargaining agreement between SMART Local Union No. 44 and SMACNA of Northeastern Pennsylvania, Inc."

*Id.* Summit, however, has refused to comply with this decision. (*Faust Aff.*, ¶ 19.) Summit maintains that compliance with the renewed agreement would severely impair its business and would require the elimination of jobs and/or the closing of the business. (*Ruggere Aff.*, ¶¶ 4, 8.)

On August 5, 2013, Local 44 filed a Complaint in this Court seeking enforcement of the decision of the National Joint Adjustment Board for the Sheet Metal Industry, and the case was docketed as *Sheet Metal Workers International Association, Local Union No. 44 v. Summit Sheet Metal, LLC*, No. 3:CV-13-2079. On September 18, 2013, upon the joint motion of Summit and Local 44, the action filed by Local 44 was consolidated with the action filed by Summit, and the Clerk of Court was directed to mark as closed the case docketed to 3:CV-13-2079.

Pursuant to the terms of the Case Management Order for the consolidated actions, the parties filed cross-motions for summary judgment on January 10, 2014. On January 31, 2014, Local 44 filed its brief in opposition to Summit's motion for summary judgment. And, on February 19, 2014, Summit filed a reply brief in further support of its motion and in opposition to Local 44's motion. The cross-motions for summary judgment are thus ripe for disposition.

## II. Discussion

### A. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012)

(quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Denal Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57, 106 S. Ct. 2505. The Court need not accept mere conclusory allegations, whether they are made in

the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505.

Where cross-motions for summary judgment are filed, as is the case here, the summary judgment standard remains the same. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). Of course, when presented with cross motions for summary judgment, the Court must consider the motions separately, *see Williams v. Phila. Hous. Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994), and view the evidence presented for each motion in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

**B.    Analysis**

The central issue to be resolved is the construction and application of Article X, Section 8, Article XV, Section 1, and the Letter of Assent. Local 44 contends that its timely notice of reopening the agreement under Article XV, Section 1 obligated Summit to

9

negotiate and comply with the interest arbitration[2] provision in Article X, Section 8. This is the case, Local 44 argues, notwithstanding Summit's notice of non-renewal of assent to the Standard Form Local 44 CBA because a promise to submit to interest arbitration survives the expiration or termination of the initial agreement. Summit, on the other hand, argues that it timely notified Local 44 that it did not intend to renew its assent to the collective bargaining agreement. Thus, Summit concludes that the agreement expired on April 30, 2013 and it had the right to refuse to negotiate or renew the agreement.

The interpretation and construction of collective bargaining agreements is governed by federal law. *Sheet Metal Workers, Local 19 v. 2300 Grp., Inc.*, 949 F.2d 1274, 1284 (3d Cir. 1991) (citations omitted). In contract interpretation actions, "summary judgment is appropriate only where the contractual language is unambiguous- *i.e.*, 'subject to only one reasonable interpretation.'" *Mylan Inc. v. Smithkline Beecham Corp.*, 723 F.3d 413, 419 (3d Cir. 2013) (quoting *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 521 (3d Cir. 1999)).

To ascertain whether a contract is ambiguous, a court is not to simply to determine whether, from its point of view, the language in the agreement is clear. *See 2300 Grp.*, 949 F.2d at 1284. Instead, a court should "'hear the proffer of the parties and determine if there [are] objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings.'" *Id.* (quoting *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir. 1980)). "Before making a finding concerning the existence or absence of ambiguity, we consider the contract language, the

---

[2]       "'Interest arbitration' in labor matters involves the submission of disputes over terms for a new collective bargaining agreement to an independent third party who determines what the new terms of the contract will be." *Chicago Typographical Union No. 16 v. Chicago Newspaper Publishers' Ass'n*, 853 F.2d 506, 509 n.6 (7th Cir. 1988).

meaning suggested by counsel, and the extrinsic evidence offered in support of each interpretation." *Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir. 1993) (citations omitted). "Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning." *Id.* If a given term in a contract is ambiguous, "'then the interpretation of that term is a question of fact for the trier of fact to resolve in light of the extrinsic evidence offered by the parties in support of their respective interpretations.'" *IBEW Local Union No. 102 v. Star-Lo Elec., Inc.*, 444 F. App'x 603, 607 (3d Cir. 2011) (quoting *Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir. 1999)).

Moreover, the question of arbitrability is an issue for judicial determination. *AT&T Technologies, Inc. v. Commc'ns Workers*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). "There is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Id.* at 650, 106 S. Ct. 1415 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)). However, even though arbitration is the preferred method for resolving disputes between the union and the employer, it "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Local 827, Int'l Bhd. of Elec. Workers v. Verizon N.J., Inc.*, 458 F.3d 305, 309 (3d Cir. 2006) (citations and internal quotation omitted).

Here, the parties dispute the impact of the non-renewal provision on Summit's

11

obligations under Article X, Section 8.[3]  Absent the non-renewal provision in the Letter of

Assent, courts have held that Article X, Section 8 and Article XV, Section 1

> provide two options upon the expiration of the agreement: automatic renewal on a yearly basis, or, if notice is given ninety days prior to the expiration date, negotiation of a renewal agreement.  If one party provides the requisite ninety days' notice of a desire to reopen negotiations, the other party has an obligation to negotiate.  In negotiations, of course, the parties may mutually agree not to enter into another agreement at all, they may enter into an agreement with different terms, or they may enter into an identical agreement. If, however, the parties "fail[ ] . . . to negotiate a renewal of [the] agreement" after one party timely seeks renewal, and negotiations thereby have become "deadlocked," either party may submit the dispute to the NJAB for arbitration. While the dispute is pending resolution before the NJAB, Article [XV] prevents the original agreement from expiring.  The NJAB has the authority to issue a decision that is final and binding on the parties.  In short, these provisions create a duty on behalf of each party to negotiate and, in the absence of agreement, obligates them to accept the decision of the NJAB.  One party's notice of intent to "terminate" the agreement on expiration does not affect the parties' contractual obligations thereunder.

*Sheet Metal Workers' Int'l Ass'n, Local Union No. 2 v. McElroy's, Inc.*, 500 F.3d 1093, 1096

(10th Cir. 2007); *Sheet Metal Workers, Int'l Ass'n, Local Union No. 24 v. Architectural Metal*

*Works, Inc.*, 259 F.3d 418, 428 (6th Cir. 2001) ("Because the Union had timely notified

Architectural of its desire to negotiate the terms of a new 'pre-hire' collective bargaining

---

[3]     "[N]othing in the [National Labor Relations Act] prohibits either party from repudiating a pre-hire obligation upon its expiration." *Sheet Metal Workers' Int'l Ass'n, Local Union No. 2 v. McElroy's, Inc.*, 500 F.3d 1093, 1097 (10th Cir. 2007); *Beach Air Conditioning and Heating, Inc. v. Sheet Metal Workers*, 55 F.3d 474, 477 (9th Cir.1995) ("Beach argues, quite correctly, that it had a statutory right to walk away from the agreement upon its expiration, without submitting to arbitration. Nothing in the National Labor Relations Act prohibits either party from repudiating a prehire agreement upon its expiration.").  However, "the absence of a statutory duty to bargain does not eliminate an employer's contractual obligations under a collective bargaining agreement." *Kentucky State Dist. Council of Carpenters v. Weh Constructors, Inc.*, 1 F.3d 1241 (6th Cir. 1993); *see also McElroy's*, 500 F.3d at 1097 ("Whether the contract itself permits repudiation, however, is another matter."); *Sheet Metal Workers' Int'l Ass'n, Local 206 v. R.K. Burner Sheet Metal Inc.*, 859 F.2d 758, 762 (9th Cir. 1988) (rejecting the argument that contractual interest arbitration obligations are cancelled by the absence of a statutory duty to bargain).

agreement for the approaching three-year contract duration, a contractual duty bound Architectural, by operation of the 'interest arbitration clause,' to negotiate renewal terms in good faith."); *Beach Air Conditioning and Heating, Inc. v. Sheet Metal Workers*, 55 F.3d 474, 476-78 (9th Cir.1995) (construing standard sheet metal industry "interest arbitration" and "contract extension" language to contractually bind each assenting employer, following the union's timely service of a notice to reopen negotiations, to either re-negotiate terms for a new agreement or submit to terms fashioned by an arbitration board); *Sheet Metal Workers Int'l Assoc. Local 110 Pension Trust Fund v. Dane Sheet Metal, Inc.*, 932 F.2d 578, 582 (6th Cir. 1991) ("Article X, § 8 does seem to embody a requirement that the parties engage in negotiations."); *Sheet Metal Workers Local Union No. 20 v. Baylor Heating & Air Conditioning, Inc.*, 877 F.2d 547, 551 (7th Cir. 1989) (holding interest arbitration clause imposed both a duty to negotiate a renewal contract and a duty to accept settlement imposed by arbitrators if negotiations failed), *abrogated on other grounds by Int'l Union of Operating Eng'rs, Local 150 v. Rabine*, 161 F.3d 427 (7th Cir. 1998); *American Metal Prods., Inc. v. Sheet Metal Workers Int'l Ass'n Local Union No. 104*, 794 F.2d 1452, 1455 (9th Cir. 1986) ("Read together, these articles represent the parties' agreement to negotiate a renewal agreement, and, if no agreement is forthcoming, to submit their dispute to the NJAB for interest arbitration."); *M.R.S. Enter., Inc. v. Sheet Metal Workers' Int'l Ass'n, Local 40*, 429 F. Supp. 2d 72, 79 (D.D.C. 2006).

Similarly, the Standard Form Local 44 CBA Article XV, Section 1 provides for automatic renewal of the agreement on a yearly basis, or, if notice of reopening is given ninety days prior to the expiration date, negotiation of a renewal agreement. However, the Letter of Assent also contains a non-renewal provision, which provides: "[i]f the undersigned Employer does NOT intend to renew this assent, he shall so notify the Local Union in writing at least thirty (30) days prior to the termination date." (*Compl.*, Ex. A, 30.)  The parties

13

disagree as to the effect of this provision on Summit's obligation to negotiate and submit to arbitration for a successor agreement upon Local 44's timely notification of its intent to reopen the agreement. Summit contends that since it complied with the non-renewal provision by providing more than thirty days notice that it did not intend to renew its assent to the agreement, "the collective bargaining agreement expired on April 30, 2013 and Summit Sheet Metal had the absolute legal right and privilege to unilaterally refuse to enter into a renewal collective bargaining agreement with Local Union #44." (Doc. 28, 2.) Local 44, on the other hand, argues that Summit's notice of non-renewal did not relieve Summit of its obligations under Article X, Section 8 to negotiate and engage in arbitration once negotiations for a successor agreement were unsuccessful because a promise to submit to interest arbitration for a successor agreement survives the expiration of the initial agreement. (Doc. 24, 18-19.)

Under the relevant provisions of their agreement, Summit had a contractual duty to bargain for a successor agreement upon receiving timely notice from Local 44 of its intention to reopen the agreement. And, Summit's subsequent notice of its non-renewal of assent to the collective bargaining agreement did not relieve it of its obligation to comply with Article X, Section 8.

Several Courts of Appeals have recognized that interest arbitration clauses can survive the expiration of a collective bargaining agreement. *See, e.g., Sheet Metal Workers' Int'l Ass'n Local 15 v. Law Fabrication, LLC*, 237 F. App'x 543, 547 (11th Cir. 2007); *Int'l Bhd. of Elec. Workers, Local Union No. 124 v. Smart Cabling Solutions, Inc.*, 476 F.3d 527, 529 (8th Cir. 2007); *Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope*, 380 F.3d 1084, 1089 n.3 (8th Cir. 2004); *Local Union No. 666, Int'l Bhd. of Elec. Workers v. Stokes Elec. Serv., Inc.*, 225 F.3d 415, 422 (4th Cir. 2000); *Local 58, Int'l Bhd. of Elec. Workers v. Southeastern Mich. Chapter, Nat'l Elec. Contrators Ass'n, Inc.*, 43 F.3d 1026, 1031 (6th Cir.

1995); *Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Huggins*, 752 F.2d 1473, 1476 (9th Cir. 1985). Courts have also concluded that an obligation to submit to interest arbitration survives even in cases where the collective bargaining agreement contains a termination clause and the employer provides timely notice of its intent to terminate the agreement. *See, e.g., Local Union 257, Int'l Bhd of Elec. Workers v. Sebastian Elec.*, 121 F.3d 1180, 1185 (8th Cir. 1997); *Sheet Metal Workers Int'l Ass'n, Local No. 162 v. Jason Mfg., Inc.*, 900 F.2d 1392, 1396-97 (9th Cir. 1990); *Int'l Bhd. of Elec. Workers, Local No. 367 v. Graham Cnty. Elec. Coop., Inc.*, 783 F.2d 897, 899 (9th Cir. 1986).

   *Jason Mfg., Sebastian Elec.*, and *Graham Cnty.* are instructive to the present dispute. In *Jason Manufacturing*, 900 F.2d at 1394, the employer was a member of a multi-employer bargaining organization, and the bargaining organization, the employer, and the union were signatories to a standard form agreement. The relevant provisions relating to interest arbitration and extension of the agreement, Article X, Section 8 and Article XII, Section 1, contain language largely similar to that of Article 8, Section 8 and Article XV, Section 1 of the Standard Form Local 44 CBA. *See id.* at 1394 n.1. The employer in *Jason Mfg.*, however, was also a signatory to a termination addendum, which provided, in pertinent part, that it "hereby agrees to be bound by any and all changes made in the present Bargaining Agreement, and/or renewed Agreements between the Association and Local Union No. 162 unless said individual member gives ninety (90) days written notice to the Union of his desire to terminate this Agreement. . . ." *Id.* at 1394 n.2. Prior to the expiration of the agreement, the employer gave timely notice that it withdrew from the bargaining organization and intended to negotiate a separate agreement. *See id.* at 1395. The employer and the union then engaged in negotiations until an impasse was reached. *See id.* Thereafter, the union requested NJAB arbitration. *See id.* The employer submitted a protest to the arbitration, raising the fact that it had given notice of termination of the

agreement to the union. *See id*. The NJAB denied the employer's protest, and it concluded that the employer and the union were bound to a recent SMACNA agreement. *See id*. The union next filed a petition for confirmation of the NJAB award in federal district court. *See id*. The district court confirmed the arbitration award. *See id*.

The action was appealed, and the employer argued that it was not bound by the arbitration award because it was not required to submit the contract-renewal dispute to arbitration in light of the termination addendum. *See id*. at 1396. Rejecting the employer's argument, the United States Court of Appeals for the Ninth Circuit stated: "[w]e hold, therefore, that notwithstanding [the employer's] termination of the agreement by notice pursuant to Addendum 1, the provisions of article X, section 8, read with article XII, section 1, require arbitration of new contract terms." *Id*. at 1397. To reach that holding, the court emphasized that, absent the termination addendum, article X, section 8 and article XII, section 1 have been read to represent an agreement between parties to negotiate a renewal agreement, and if no agreement can be reached, to submit the dispute for interest arbitration. *See id*. at 1396 (citation omitted). Additionally, the court noted that "[t]imely notice of termination does not automatically cancel the interest arbitration clause of a collective bargaining agreement." *Id*. (citing *Int'l Bhd. of Elec. Workers, Local No. 367 v. Graham County Elec. Coop., Inc.*, 783 F.2d 897, 899-900 (9th Cir. 1986)). Thus, while the Ninth Circuit recognized that it had not previously "consider[ed] the effect of an employer's termination of its agreement with the union pursuant to a termination addendum," the court concluded that "termination[ ] brought about by notice[ ] is no different from termination as a result of expiration of the agreement." *Id*. at 1397. And, because the addendum under which the employer gave its notice to terminate "did not abrogate the obligation incurred in the main agreement to negotiate, and if negotiations failed, to arbitrate," the provisions of the agreement required arbitration of new contract terms. *See id*.

Similarly, in *Sebastian Electric*, 121 F.3d at 1182, four employers executed a letter of assent setting forth an agreement with the union that expressly authorized a multi-employer association to represent them for matters relating to the current and any subsequently approved collective bargaining agreement. While the letters of assent were in effect, the multi-employer association entered into two collective bargaining agreements containing interest arbitration clauses. *See id*. The letters of assent signed by the employers also contained termination provisions, which provided that the authorization "shall remain in effect until terminated by the undersigned employer giving written notice to [the multi-employer association] and to [the union] at least one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement." *Id*. Thereafter, the four employers each provided timely notice of their intent to terminate its respective letter or letters of assent. *See id*. at 1182 & n.4. The union notified the employers that it intended to negotiate successor collective bargaining agreements, but the employers refused to negotiate. *See id*. at 1182. The union then provided notice that it planned to submit the issue concerning successor collective bargaining agreements to arbitration, and after the matter was submitted to arbitration, the arbitrator issued awards which directed the employers to sign and implement successor agreements. *See id*. The union subsequently filed actions in federal district court to enforce the arbitration awards, and the district court held that the arbitration awards were binding and enforceable against the employers. *See id*. at 1183.

On appeal, the United States Court of Appeals for the Eighth Circuit found unpersuasive the employers' suggestion that "the interest arbitration clauses at issue in the present case did not survive defendants' termination of the letters of assent and the collective bargaining agreements." *Id*. at 1185. Rather, the Eighth Circuit affirmed the district court's reasoning that the "interest arbitration clause here survived the illegal

17

termination of the collective bargaining agreement by defendants." *Id.*

And, in *Graham Cnty.*, a cooperative and a union were parties to a series of collective bargaining agreements. 783 F.2d at 898. Pursuant to the terms of the agreement, the cooperative gave timely notice to the union that it desired to terminate the agreement on its expiration date. *See id.* Based on the language of the agreement, the court determined that "the parties intended that the arbitration clause should continue past the termination of the contract if arbitration had been demanded prior to that termination." *Id.* at 899. The court reasoned that "[t]o hold all rights under the arbitration clause terminated at the contract's expiration date would effectively invalidate the entire provision and would be inconsistent with the clear and unambiguous language of that clause." *Id.* (citing *Hotel & Restaurant Employees Local 703 v. Williams*, 752 F.2d 1476, 1479 (9th Cir. 1985)).

*James Mfg.*, *Sebastian Elec.*, and *Graham Cnty.* provide persuasive support for the conclusion that the interest arbitration clause survived Summit's notice of its intent not to renew its assent to the Standard Form Local 44 CBA. Here, the non-renewal provision in the Letter of Assent did not abrogate Summit's obligations under Article X, Section 8. Thus, while the Letter of Assent allowed Summit to not "renew" its assent to the agreement between SMACNA of Northeastern Pennsylvania and Local 44, the non-renewal of assent did not eliminate Summit's obligation to negotiate, and if necessary, arbitrate, for the terms of a successor contract upon Local 44's timely notice of its intent to reopen the agreement. And, because interest arbitration clauses can survive termination, it has been said that "employers and eligible workers may be subject to the imposition of at least one undesired 'successor' agreement through interest arbitration." *Smart Cabling Solutions*, 476 F.3d at 529; *Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 380 F.3d 1084, 1089 n.3 (8th Cir 2004).

Disposing of this action at the summary judgment stage is therefore appropriate

because "the meaning of each operative provision of the collective bargaining agreement related to the NJAB's jurisdiction over the instant contest, and [Summit's] Letter of Assent thereto," *Architectural Metal Works*, 259 F.3d at 426 n.6, are unambiguous and subject to only one reasonable interpretation.[4] First, for the reasons explained above, the non-renewal provision did not abrogate Summit's obligations under Article X, Section 8 of the Standard Form Local 44 CBA. Second, the meaning of the non-renewal provision advanced by Summit effectively renders its promise to negotiate and submit to interest arbitration a nullity. Courts, however, are to consider agreements as a whole, and "as in all contracts, the collective bargaining agreement's terms must be construed so as to render none nugatory." *H.C. Lawton, Jr., Inc. v. Truck Drivers, Chauffeurs & Helpers Local Union No. 384*, 755 F.2d 324, 328 (3d Cir. 1985). Lastly, the extrinsic evidence relied on by Summit does not present the existence of an ambiguity in the collective bargaining agreement. According to Ruggere, the parties agreed during negotiations that if the contract was not financially advantageous to both parties Summit could revoke its assent provided Local 44 was given thirty days notice of non-renewal. Summit's extrinsic evidence does not address the effect of the non-renewal provision on the interest arbitration clause, nor does it suggest that its ability to not renew its assent to the agreement abrogated or otherwise impacted its obligations under Article X, Section 8. Rather, this evidence is consistent with the terms of the parties' agreement, which provides that Summit could revoke its assent to the collective bargaining agreement as set forth in the Letter of Assent. As such, the extrinsic evidence in this case is in accord with the terms of the collective bargaining agreement, and because it does not reflect that the interest arbitration clause expired upon Summit's non-renewal of

---

[4]     As stated, before making a determination as to the existence or absence of ambiguity, a court should consider the language of the contract, the meaning suggested by counsel, and the extrinsic evidence offered by the parties. *See Rolls-Royce*, 989 F.2d at 135.

its assent, there exists no ambiguity in the Standard Form Local 44 CBA and the Letter of Assent.

Accordingly, because Local 44 timely served Summit with notice of reopening more than ninety days prior to the expiration of the agreement, the parties were thereafter unable to negotiate a renewal of the agreement, and the matter was properly submitted to the NJAB, the NJAB had the authority to resolve this dispute. Therefore, Local 44's motion for summary judgment seeking Summit to comply with the NJAB's edict that it "immediately execute a three year collective bargaining agreement with Local Union 44, effective May 1, 2013 to April 30, 2016, including terms and conditions identical to those set forth in the current collective bargaining agreement between SMART Local Union No. 44 and SMACNA of Northeastern Pennsylvania, Inc.," *Sheet Metal Workers International Association, Local Union No. 44 v. Summit Sheet Metal, LLC*, No. 3:CV-13-2079, ECF No. 1, Ex. C, will be granted as to the substantive covenants and conditions governing the labor-management relationship contained in that agreement.

However, to the extent that the current collective bargaining agreement between SMART Local Union No. 44 and SMACNA of Northeastern Pennsylvania, Inc. contains interest arbitration and extension clauses, such clauses are null, void, and unenforceable as against Summit. While the issue was not addressed in the parties' submissions, there is ample persuasive authority establishing that parties to a collective bargaining agreement may be bound to an interest arbitration clause in a successor contract only by mutual consent. *See, e.g., Architectural Metal Works*, 259 F.3d at 430 ("the law is clear that an arbitrator may not use an interest arbitration clause as a means of self-perpetuation, and that this type of 'second generation' interest arbitration clause cannot be included over another party's objection."); *Stokes*, 225 F.3d at 425 ("Because an 'interest arbitration clause is a non-mandatory subject of bargaining,' parties may be bound to such a clause

20

in a future contract only by mutual consent."); *Beach*, 55 F.3d at 478 (if parties are unable to agree to term for successor contract, "no agreement imposed by an arbitrator can contain an interest arbitration provision"); *Southeastern Mich. Chapter*, 43 F.3d at 1032 (interest arbitration clause cannot be included over another party's objection); *Am. Metal Prods.*, 794 F.2d at 1457 ("The inclusion of an interest arbitration clause in a successor agreement requires the consent of both parties, however, not merely the absence of objection."); *Sheet Metal Workers' Int'l Ass'n, Local 14 v. Aldrich Air Conditioning, Inc.*, 717 F.2d 456, 459 (8th Cir. 1983) ("We hold that an interest arbitration clause is unenforceable insofar as it applies to the inclusion of a similar clause in a new collective bargaining agreement."); *NLRB v. Columbus Printing Pressmen & Assistants' Union No. 252*, 543 F.2d 1161, 1169 (5th Cir. 1976); *Globe Newspaper Co. v. Int'l Ass'n of Machinists*, 648 F. Supp. 2d 193, 198 (D. Mass. 2009) ("It appears that every court to have considered this question has concluded that this type of second generation interest arbitration provision is unenforceable as contrary to public policy."). And, although Summit did not appear before the NJAB and therefore did not specifically object to the inclusion of non-mandatory terms of collective bargaining in the successor agreement, its generalized objection to the NJAB's authority to craft a successor agreement barred the NJAB from imposing any contract provision relating to non-mandatory subjects of collective bargaining, such as interest arbitration. *See Architectural Metal Works*, 259 F.3d at 430 n.13 (while employer did not appear before the NJAB or specifically object to the insertion of interest arbitration and extension clauses, its generalized objection to any and all contract clauses prevented the NJAB from inserting interest arbitration and extension clauses in the successor agreement). Indeed, as the Sixth Circuit noted in *Architectural Metal Works*, "even in the absence of a specific objection, any arbitrator-imposed covenant or condition which does not directly address a mandatory subject of collective bargaining must be avoided as against public policy regarding any party which did

21

not explicitly assent to it." *Id.* at 430 n.13; *see also Stokes*, 225 F.3d at 425 ("interest arbitration clause is a non-mandatory subject of bargaining"); *Robert S. Bortner, Inc. v. Sheet Metal Workers Int'l Ass'n Local Union No. 19*, No. 05-CV-1625, 2006 WL 1000025, at *10 (M.D. Pa. Apr. 13, 2006) ("Nonmandatory provisions in NJAB awards are unenforceable."). Therefore, insofar as the current collective bargaining agreement between SMART Local Union No. 44 and SMACNA of Northeastern Pennsylvania, Inc. contains interest arbitration and extension clauses, such clauses are unenforceable against Summit.[5]

Lastly, Local 44 argues that it is entitled to attorneys' fees under the contractual fee-shifting provision in the Standard Form Local 44 CBA. Article X, Section 6 provides:

> In the event of noncompliance within thirty (30) calendar days following the mailing of a decision of a Local Joint Executive Board, Panel or the National Joint Adjustment Board, a local party may enforce the award by any means including proceedings in a court of competent jurisdiction in accord with applicable state and federal law. If the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorney's fees in addition to such other relief as is directed by the courts.

(*Compl.*, Ex. A, 8.)

The second sentence of Article X, Section 6 specifically entitles Local 44 as the prevailing party to its costs and attorneys' fees incurred in enforcing the arbitration award issued by the NJAB. The NJAB issued an arbitration award in favor of Local 44, Local 44 brought an action to enforce the NJAB award, and Local 44's motion for summary judgment will be granted for the reasons previously identified. Accordingly, Local 44 is entitled to recover its reasonable attorneys' fees and costs incurred in seeking to enforce the NJAB award pursuant to Article X, Section 6 of the Standard Form Local 44 CBA. *See, e.g., Law*

---

[5] Notably, Article XV, Section 2 of the Standard Form Local 44 CBA provides: "[i]f pursuant to federal or state law, any provision of this Agreement shall be found by a court of competent jurisdiction to be void or unenforceable, all of the other provisions of this Agreement shall remain in full force and effect." (*Compl.*, Ex. A, 11.)

*Fabrication*, 237 F. App'x at 549 (interpreting identical provision as providing for contractual attorney's fees). Local 44 will be ordered to submit documentation supporting its request for reasonable attorney's fees and costs incurred in seeking to enforce the NJAB award within fourteen (14) days from the date of entry of the accompanying Order.[6]

### III. Conclusion

For the above stated reasons, Summit's motion for summary judgment will be denied and Local 44's motion for summary judgment will be granted. Summit will be ordered to comply with the decision of the National Joint Adjustment Board rendered on June 24, 2013; however, if the current collective bargaining agreement between SMART Local Union No. 44 and SMACNA of Northeastern Pennsylvania, Inc. contains interest arbitration and extension clauses, such clauses are null, void, and unenforceable against Summit. And, Local 44's request for reasonable attorneys' fees and costs pursuant to Article X, Section 6 of the Standard Form Local 44 CBA will be granted, and Summit will have fourteen (14) days from the date of entry of the accompanying Order to submit documentation substantiating its request for reasonable attorneys' fees and costs.

An appropriate order follows.

March 28, 2014
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

---

[6]    Summit will be afforded fourteen (14) days from the filing of Local 44's documentation supporting its fees and costs to lodge, if it so desires, objections to Local 44's application for fees and costs. Thereafter, Local 44 will be provided fourteen (14) days to submit a reply brief in further support of its fee application.

23